IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC BALLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-506-KFP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On September 29, 2017, Plaintiff filed applications for Disability Insurance Benefits and Supplement Security Income, alleging a disability onset date of September 20, 2017. R. 124, 173-74, 301, 308. Following a hearing, the Administrative Law Judge denied Plaintiff's applications on September 24, 2019 (R. 124-33), and the Appeals Council denied Plaintiff's Request for Review on May 13, 2020 (R. 1-9). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security, which is now ripe for judicial review under 42 U.S.C. § 405(g). Because the Commissioner's decision is supported by substantial evidence and the correct legal standards were applied, the decision is AFFIRMED.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

I.     **STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

II.     **FACTUAL BACKGROUND**

Plaintiff was 51 years old on his alleged onset date and 53 years old when the ALJ issued his unfavorable decision in September 2019. R. 121, 173-74. Plaintiff has a high school education (having completed the twelfth grade), and previously worked as an electrician. R. 153-54, 324, 339, 345. Plaintiff stopped working on July 1, 2017 when he was laid off, and he alleges disability beginning September 20, 2017 due to stroke, fatigue, and issues with speech, breathing, walking, and memory. R. 338.

III.     **THE ALJ'S DECISION**

Upon review of the record, the ALJ determined Plaintiff had severe impairments of "hypertension with non-compliance with treatment" and "cerebrovascular accident with right cerebral sub-acute infarction with dysphasia and left-sided weakness." R. 126.

Despite these impairments, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work except that he cannot perform jobs requiring clearly understood speech. R. 127. The ALJ then found, based on testimony from the vocational expert ("VE"), that a significant number of jobs exist in the national economy Plaintiff could perform with his limitations. R. 132-33. Thus, the ALJ determined Plaintiff was not disabled. R. 133.

## IV.     ISSUE BEFORE THE COURT

Plaintiff presents a single issue for this Court to consider, which is whether the ALJ erred by failing to order Plaintiff a consultative examination. Doc. 12 at 2, 5.

## V.      DISCUSSION

### A.     Substantial Evidence Supports the RFC

The RFC is a determination the ALJ makes based on "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 416.945(a)(1), 416.945(a)(3). It is "used to determine [one's] capability of performing various designated levels of work[.]" *Pupo v. Comm'r of Soc. Sec.*, 17 F.4th 1054, 1064 (11th Cir. 2021) (citing 20 C.F.R. § 416.967). As noted above, the ALJ determined that Plaintiff has the RFC to perform light work except that he cannot perform jobs requiring clearly understood speech. R. 127. Upon review, the Court finds that the RFC and the ALJ's determination based upon it are supported by substantial evidence.

At the outset, the ALJ specifically noted that he thoroughly reviewed all the medical evidence of record in its entirety pertaining to Plaintiff's alleged symptoms and

impairments. R. 128. He then went on to specifically address all the record medical evidence as well as testimony proffered at the hearing.

First, according to Dr. James Anderson, an impartial medical expert who testified at Plaintiff's hearing, Plaintiff presented to the hospital in September 2017 with dysphasia and left-sided weakness and hypertension. R. 152. During the period of examination, Plaintiff's signs cleared. *Id.* An examination of Plaintiff revealed a right cerebral hemispheric subacute infarction. *Id.* During Plaintiff's two-day stint at the hospital, his symptoms dissipated. *Id.* Follow-up treatment notes reveal Plaintiff failed to comply with treatment for hypertension, and the medical record contains no further restrictions of physical activity. *Id.* Dr. Anderson testified—and the medical records support—that Plaintiff had no significant residual problems associated with his cerebrovascular accident, and he opined that Plaintiff would be limited to light work with no additional limitations, as the record failed to document any limitations.[2] R. 153. This medical opinion, which the ALJ found to be very persuasive and very consistent with the overall medical record (R. 130), aligns with the ALJ's crafted RFC.

Second, Plaintiff's treatment records do not support his assertion that he became disabled in September of 2017 due to residuals from a cerebrovascular accident. On September 20, 2017, the alleged onset date, Plaintiff presented at Baptist Medical Center South for a possible stroke. R. 390. An MRI of Plaintiff's brain revealed a subacute infarct

---

[2] The ALJ's more restrictive finding that Plaintiff cannot perform jobs requiring clearly understood speech was based in large part on his observation of Plaintiff's speech ability at the hearing. R. 127. When speaking with the VE during the hearing, the ALJ stated: "I'll add on a restriction. No job requiring – requiring very clear – clearly understood speech. I do that with reluctance because [Plaintiff] thinks he has a speech impairment, but I understood him fine." R. 154.

of the right cerebral hemisphere and an infarct adjacent to the left lateral ventricle (R. 396), and the attending physician at Baptist associated these findings with a cerebrovascular accident and reported that Plaintiff's hypertension was not under control based on his elevated blood pressure reading (R. 401). The attending physician further reported that Plaintiff had developed dysarthria as a result of the stroke. R. 401, 404. However, Plaintiff had no other residual deficits, and his physical therapist and occupational therapist cleared him prior to discharge. R. 444. Plaintiff reportedly ambulated well (R. 443), had five-out-of-five motor strength in all extremities (R. 444), and had good deep tendon reflexes. His blood pressure was "better controlled" (R. 404, 441) and his speech had "improved greatly" prior to discharge (R. 418). Additionally, the attending physician provided Plaintiff with information to receive free or low-cost anti-hypertensive medications. R. 418-419.

According to treatment notes from Montgomery Primary Adult Medicine, Plaintiff was not compliant in taking his anti-hypertensive medications. On November 6, 2017, treating physician Dr. David Franklin reported that Plaintiff had been non-compliant with treatment. R. 504-505. On February 26, 2018, Plaintiff reported having run out of his medications. R. 508. At that time, Plaintiff was described as healthy-appearing, well-nourished, well-developed, in no acute distress, and ambulating normally. *Id.* A physical examination revealed signs of slurred speech and some right-sided face and jaw numbness, but no deficits of the gait and station, sensation, or motor strength and tone. R. 509. Plaintiff exhibited normal movement of all extremities. *Id.* Notably, with medication compliance, Plaintiff's blood pressure remained under control, with readings of 130/80 on March 6, 2018 (R. 510) and 122/75 on March 28, 2018 (R. 513). On the latter date, Dr. Margaret

Lamkin noted that Plaintiff's cardiovascular, musculoskeletal, and neurological findings were normal. R. 515. In fact, Plaintiff presented on that date not for any issues related to his September 2017 stroke, but for a complaint of lip swelling after eating shrimp at a new restaurant. R. 513-514.

As far as the Court can tell, the medical record contains no further medical treatment after March 2018, at least a year and a half prior to the ALJ's decision. During this period of alleged disability, there is no evidence of any emergency room visits, hospital admissions, or outpatient treatment. Based in part on Dr. Anderson's testimony and opinion and the objective medical evidence indicating a history of non-compliance with treatment, relatively mild residual deficits and overall normal examinations, and the apparent lack of need for treatment in at least a year-and-a-half period[3], the ALJ determined that Plaintiff's impairments had not been of disabling severity for a continuous period of one year or more and that he was capable of performing work consistent with the crafted RFC.[4]

Accordingly, the undersigned finds that more than a scintilla of evidence supports the ALJ's findings. To the extent Plaintiff believes the record evidence was insufficient for the ALJ to make an informed decision, *see* Doc. 12 at 5-6, the Court is not entitled to decide the facts anew, reweigh the evidence, or substitute its judgment for that of the

---

[3] In his decision, the ALJ noted that Plaintiff's failure to seek ongoing treatment through a low-cost medical program, such as Montgomery Primary Health, or emergency room or hospital treatment was unsupportive of his allegations of disability. R. 129. In his brief, Plaintiff does not refute this finding or offer any explanation for his lack of medical treatment during this period. *See generally* Doc. 12.

[4] The ALJ specifically provided that he came to these conclusions after a thorough review of *all* the evidence of record, including Plaintiff's allegations and testimony, forms completed at the request of the Social Security Administration, the objective medical findings, the medical opinions and prior administrative findings, and other relevant evidence. R. 131.

Commissioner. *See Winschel*, 631 F.3d at 1178. This is true even if the evidence preponderates against the ALJ's findings. *See Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017) (citation omitted). Thus, the ALJ's decision was properly supported by substantial evidence.

### B. The ALJ's Failure to Order Plaintiff a Consultative Examination was not Legal Error

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citation omitted). This duty generally requires the ALJ to assist, when necessary, in gathering medical evidence from Plaintiff's medical sources and to order a consultative examination when one is necessary to make an informed decision. 20 C.F.R. § 404.1512(b). Nonetheless, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted).

"Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)). Before the Court will remand a case for further development of the record, there must be a showing that the ALJ's failure to develop the record led to evidentiary gaps, which resulted in unfairness or clear prejudice. *Graham*, 129 F.3d at 1423 (citing *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995)). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before

him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted).[5]

Upon review, the undersigned concludes that the ALJ fulfilled his obligation to develop a full and fair record in this case, and his failure to order a consultative examination did not result in unfairness or clear prejudice to Plaintiff. As an initial matter, at no time during the hearing before the ALJ did Plaintiff or his counsel request an additional consultative examination or suggest that further medical evidence was needed to evaluate Plaintiff's condition (R. 140-158), nor does it appear that they argued to the Appeals Council that an additional consultative examination was warranted (R. 299-300). Additionally, it appears the ALJ considered all the medical records that existed from the date of Plaintiff's alleged onset date through the date of his decision, and Plaintiff does not

---

[5] The Social Security regulations provide:

> Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b).

challenge the accuracy of these records or the ALJ's analysis of these records. *See generally* Doc. 12.

Most importantly, Plaintiff has not identified *any* inconsistencies or insufficiencies in the record that would necessitate a consultative examination or demonstrate "evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand to the Secretary." *Graham*, 129 F.3d at 1423. Specifically, Plaintiff "has failed to point to anything in the record which suggests that additional medical evidence specific to [his] situation might be gathered, nor has [he] alleged undiscovered facts or an undeveloped avenue of inquiry." *Id.* Instead, Plaintiff argues, in a conclusory fashion and single paragraph, that the mere "absence of any recent evaluations or assessments of the residuals and resulting limitations from [Plaintiff's] cerebrovascular accident" necessitated a consultative examination. Doc. 12 at 5-6. Plaintiff does not state any limitations he allegedly possesses, which the ALJ failed to consider, nor does he state any limitations a consultative examination may support or indicate why those limitations would necessitate a different RFC. Instead, he simply speculates that "[a] consultative examination report could reasonably have changed the outcome of the case due to such a report's significance for the consideration of [Plaintiff's] impairment." *Id.* at 6.

The undersigned is not persuaded by this vague, conclusory argument. An ALJ need not order a consultative examination when the record contains sufficient evidence to support a determination, as it does in this case. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *see also* 20 C.F.R. § 404.1519a. The mere fact that the ALJ relied, in part, on a year-and-a-half gap in medical treatment when making his determination does not

9

indicate insufficient evidence to support that determination; instead, the ALJ noted the gap in medical treatment as a means of demonstrating that Plaintiff presumably did not have a serious medical condition during that time necessitating medical attention or treatment. *See Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (holding gaps in treatment history supported the ALJ's denial of benefits); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("The ALJ discredited [plaintiff's] testimony by explaining that [his] pain had not require[d] routine or consistent treatment."). Plaintiff does not refute this presumption in his brief.

Ultimately, Plaintiff must bear the responsibility and consequences for the limited medical record, as it was his burden, not the ALJ's, to produce medical evidence supporting his claim for disability. *See Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). To the extent Plaintiff believes additional medical evidence would have changed the outcome of this case—though he does not make clear what evidence that might be—he failed to obtain it, failed to provide any reasoning as to why he did not or could not obtain it, and failed to demonstrate that the current medical evidence of record was insufficient to support the ALJ's RFC and disability determination. Thus, the ALJ did not err in failing to order a consultative examination under these circumstances.

## VI. CONCLUSION

For the reasons set forth above, the undersigned finds that the ALJ's determinations are supported by substantial evidence and that the ALJ correctly applied the law. Accordingly, it is ORDERED that:

(1) The Commissioner's decision is AFFIRMED.

(2) A final judgment will be entered separately.

DONE this 4th day of March, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE